UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICHARD THOMPSON,

    *Plaintiff*,

v.

PATRICIA K. CUSHAW, *et al.*,

    *Defendants*.

Civil Action No. 17-2603 (RDM)

**MEMORANDUM OPINION AND ORDER**

Plaintiff Richard Thompson, proceeding *pro se*, is a federal prisoner in custody of the United States Bureau of Prisons ("BOP"). In December 2017, Thompson filed suit against nine officials employed by the United States Parole Commission ("USPC"), as well as two former directors of the BOP, alleging that they violated his due process rights by "denying [him] mandatory parole" based on "illogical" reasons. Dkt. 1 at 14 (Compl. ¶ 61). Before Defendants could answer, moreover, Thompson moved for a preliminary injunction to "return[]" him to the halfway house where he was briefly held leading up to his mandatory parole date. Dkt. 15 at 12. For the reasons set forth below, the Court will **DENY** Thompson's motion.

### I. BACKGROUND

Thompson—by his own admission—has an extensive criminal history, most of which he accumulated while in prison. In 1974, he was sentenced to eight years' imprisonment on a rape charge. Dkt. 1 at 6 (Compl. ¶ 15); Dkt. 27-1 at 2 (Pl.'s Ex. B-1). Three years later, while he was in custody, Thompson was convicted of murdering another inmate. Dkt. 1 at 6 (Compl. ¶ 16); Dkt. 27-1 at 2 (Pl.'s Ex. B-1). He was sentenced to a life sentence, which he began serving in 1980. Dkt. 27-1 at 2 (Pl.'s Ex. B-1). In 1982 and 1983, Thompson received a five-year sentence

1

for attempted escape (concurrent to his life sentence) and a ten-year sentence for assault on a federal corrections officer (consecutive to his life sentence). Dkt. 1 at 7 (Compl. ¶¶ 18–19); Dkt. 27-1 at 2 (Pl.'s Ex. B-1). In addition to these criminal charges, Thompson also incurred sixteen separate disciplinary infractions between 1980 and 1985. Dkt. 27-1 at 4 (Pl.'s Ex. B-3). He has been "largely compliant with the rules of the institution since 1985." Dkt. 1-1 at 27 (Pl.'s Ex. K).

In March 1992, Thompson appeared before the USPC for his initial parole hearing.[1] Dkt. 1 at 7 (Compl. ¶ 20). Pursuant to 28 C.F.R. § 2.12(a), a federal prisoner who is eligible for parole is entitled to an initial parole hearing to determine whether the USPC should "(1) set a presumptive release date . . . ; (2) set an effective date of parole; or (3) continue the prisoner to a fifteen year reconsideration hearing," *id.* § 2.12(b). Thompson alleges that, after the initial hearing, the Commission continued him to his fifteen-year reconsideration hearing set for February 2007. Dkt. 1 at 7 (Compl. ¶ 20); Dkt. 15 at 4. Thompson further alleges that he received statutory interim hearings every two years thereafter. Dkt. 15 at 4; *see also* 28 C.F.R. § 2.14(a)(1)(ii). These hearings did not alter his parole status, but, in 1998, the USPC did expedite his fifteen-year reconsideration hearing by one year for his "Superior Program Achievement" of "maintaining a clear conduct record" for "15 years." Dkt. 1 at 7 (Compl. ¶ 22); *see also* 28 C.F.R. § 2.14(a)(2)(ii).

In September 2006, Thompson appeared before the USPC for his fifteen-year reconsideration hearing. Dkt. 15 at 4; Dkt. 27-1 at 2 (Pl.'s Ex. B-1). The Examiner considered Thompson's prehearing assessment, as well as statements by Thompson and his representative.

---

[1] Unlike his complaint, Thompson's motion for a preliminary injunction alleges that his initial hearing took place on April 29, 1992. Dkt. 15 at 4. The discrepancy is immaterial to the Court's analysis.

*See* Dkt. 27-1 at 2–3 (Pl.'s Exs. B-1, B-2). Thompson alleges that "[a]t the conclusion of that hearing [he] . . . was recommended to continue to his statutory two-thirds mandatory release date with specific condition[s] of parole." Dkt. 15 at 4–5; *see also* Dkt. 1 at 8 (Compl. ¶ 24) ("The examiner, Mr. Paul Howard, recommended [Thompson] be . . . paroled at his two-thirds mandatory release date at 2/3/2017, with detailed and specific parole conditions which created a presumption of release."). The exhibits Thompson attached to his reply brief, however, show that the Examiner recommended *against* parole and that Thompson unsuccessfully appealed that decision. *See* Dkt. 27-1 at 6 (Pl.'s Ex. B-5) (Hrg. Summary) ("Recommendation: Continue to Expiration"); *id.* at 8 (Pl.'s Ex C-1) (Notice of Action) ("As a result of the hearing conducted on September 20, 2006, the following action was ordered: Continue to expiration."); *id.* at 11 (Pl.'s Ex. D) (Notice of Action on Appeal) ("You have also claimed on appeal that the decision to continue to expiration is not supported by the facts. The National Appeals Board finds no merit to your claim."). Even though "[Thompson] ha[d] not incurred any disciplinary infractions since 1985," the Examiner recommended against parole because "[Thompson] is still viewed as a more serious risk based on his original criminal offense for Rape, current offense for Murder, Attempted Murder (2 counts), Assault on a Staff Member (2 counts), Escape, and 32 administrative infractions." *Id.* at 5–6 (Pl.'s Exs. B-4, B-5).

Thompson's contrary understanding of the USPC's decision may have resulted from the Examiner's assertion that Thompson's "MR/Statutory Release" date was February 3, 2017, even though his "Full Term Date" was "Life," *id.* at 2 (Pl.'s Ex. B-1), and from arguable ambiguity in whether the Examiner's recommendation to "Continue to Expiration" was intended to refer to "expiration" of the "MR/Statutory Release" date or the "Full Term Date." Although not a defined term, the USPC typically uses the phrase "continue to expiration" to refer to the

3

"mandatory release" date—that is, the date the sentence imposed by the court expires less statutory good time—and not to the "mandatory parole" date—that is, the date on which the prisoner has served "two thirds of each consecutive term or terms" or his sentence. *See* 18 U.S.C. § 4206(d); 28 C.F.R. §§ 2.35(d); 2.60(f); Dkt. 27-1 at 13 (Pl.'s Ex. I) (Notice of Action) ("Deny mandatory parole. Continue to expiration."); Dkt. 30-1 at 1 (Pl.'s Ex. T) (Notice of Action) ("No change in previous decision to deny mandatory parole and continue to expiration").[2]

In February 2017, Thompson became eligible for what is inaptly named "mandatory parole," Dkt. 1 at 14 (Compl. ¶ 61), which, in the federal system, is not mandatory at all. *Dufur v. U.S. Parole Comm'n*, 314 F. Supp. 3d 10, 19 (D.D.C. 2018); *see also* 18 U.S.C. § 4206(d) (providing that mandatory release is not appropriate if the Commission "determines that [the prisoner] has seriously or frequently violated institution rules and regulations"). Thompson alleges that, "in anticipation" of his mandatory parole date, he was transferred to a halfway house on May 23, 2016. Dkt. 1 at 10 (Compl. ¶ 34); Dkt. 1-1 at 26 (Pl.'s Ex. J) (Dep't of Corrections Inmate Mgmt. Rpt.). Less than two weeks later, however, he was taken back to a federal detention center. Dkt. 1 at 10 (Compl. ¶ 38). Defendants represent that Thompson's placement in the halfway house was due to "an error or miscommunication that occurred between the Parole Commission and BOP" and that "he was returned when the error was discovered." Dkt. 20 at 6. Indeed, Thompson's exhibits confirm that the same week he was "furlough[ed]" to the

---

[2] The Examiner's use of the phrase "MR/Statutory Release" only adds to this confusion. Although the acronym "MR" seems to refer to the "mandatory release" date, understood in context, it is evident that the Examiner used the phrase "MR/Statutory Release" date to refer to the "mandatory parole" date. *See* 18 U.S.C. § 4206(d). Thompson agrees that "his mandatory two-thirds release date"—that is, his "mandatory parole" date—was February 3, 2017. Dkt. 1 at 14 (Compl. ¶ 61).

halfway house "in anticipation of his Parole," Dkt. 1-1 at 20 (Pl.'s Ex. J) (Dep't of Corrections Inmate Mgmt. Rpt.), the USPC issued a memorandum "declin[ing] to order Mandatory Parole," and, instead, "schedul[ing] a Mandatory Parole Hearing on the next available docket," *id.* at 27 (Pl.'s Ex. K).

Thompson appeared for his mandatory parole hearing in July 2016, and parole was again denied. Dkt. 1 at 11 (Compl. ¶¶ 40–42). The Examiner cited Thompson's past behavior, including the fact that he had "killed an inmate" in 1976, "attempted to escape" in 1982, "stabbed a BOP staff member 17 times in 1983," and committed "many more infractions," and reasoned that those incidents "indicate[d] a high probability that [he] [would] not follow society's folkways and mores if released." Dkt. 1-1 at 36. (Pl.'s Ex. S) (Notice of Action). Thompson appealed. *See* Dkt. 1-1 at 37–38 (Pl.'s Ex. T); *id.* at 44—69 (Pl.'s Ex. U). Later, Thompson also filed a petition for writ of habeas corpus in the U.S. District Court for the District of New Jersey under 28 U.S.C. § 2241, and the court reopened a prior case that Thompson had brought in that court. Dkt. 1 at 11–12 (Compl. ¶¶ 45, 51–52).

In December 2017, Plaintiff brought this action against the eleven federal officials employed by the BOP and USPC who he alleges were involved in the decision to deny him parole, asserting that they "maliciously, arbitrability, capriciously, and intentionally deprived [him] of [his] Due Process rights." Dkt. 1 at 15 (Compl. Prayer). Thompson seeks $31,200 in compensatory damages, $100,000,000 in punitive damages, and "[a] permanent injunction . . . reinstating [his] release date immediately, [and] returning [him] back to the halfway-house." *Id.* On February 22, 2018, Thompson filed a motion for the appointment of counsel, which the Court denied, reasoning that, because the "mandatory parole" statute "is not, in fact, mandatory," Thompson "ha[d] yet to show that he has a claim that is potentially

5

meritorious or that his claim is unusually complex." Dkt. 12 at 2. Thompson now moves for a preliminary injunction, requesting that the Court order Defendants to "restore [him] to his former status at the [h]alfway [h]ouse prior to being taken [into] custody by the U.S. Marshal[] Service until the Court resolve[s] the matter." Dkt. 15 at 7. In support of his motion, Thompson explains that he does not contend that "mandatory parole" is, in fact, mandatory but rather argues that the USPC "creat[ed] an expectation of release" when "it continued [him] to his mandatory release date," and that it failed to provide him with due process when it subsequently denied him "mandatory parole" based on "the same set of facts" that the USPC had previously considered when it "continued [him] to his mandatory release date." Dkt. 27 at 1–2.

## II. ANALYSIS

Although Thompson's complaint seeks both money damages and injunctive relief, his motion for a preliminary injunction is limited to seeking his "return[] . . . to his former status at the halfway house and reinstat[ement of] his release date." Dkt. 27 at 6. The Court is without authority to grant either form of relief.

**A.     Reinstatement of Release Date**

"A preliminary injunction is an extraordinary remedy that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004). To prevail, a party seeking a preliminary injunction must show (1) "that he is likely to succeed on the merits," (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4) "that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The movant "bear[s] the burden of produc[ing] . . . credible"

evidence sufficient to demonstrate his entitlement to injunctive relief. *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 173 (D.D.C. 2015) (quotation marks omitted) (first alteration in original).

Before applying the four-factor test, however, the Court must assess whether it has jurisdiction—including personal jurisdiction—to grant the relief sought. Because the Court must evaluate its jurisdiction "through the lens of the standard applicable at [the relevant] stage of the proceeding," this means that the Court must determine whether Thompson has carried his burden of showing that there is a "substantial likelihood" that the Court has personal jurisdiction to enter the relief sought. *Cf. Cal. Ass'n of Private Postsecondary Schs. v. DeVos*, No. 17-999, 2018 WL 5017749, at *4 (D.D.C. Oct. 16, 2018) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). Absent such a showing, the Court "has no power to grant an interlocutory . . . injunction . . . , and an order granting [such] an injunction . . . [would be] erroneous as a matter of law." *Khatib v. All. Bankshares Corp.*, 846 F. Supp. 2d 18, 25 (D.D.C. 2012) (quoting *Enter. Int'l, Inc. v. Corporacion Estal Petrolera Ecuatoriana*, 762 F.2d 464, 470 (5th Cir. 1985)).

To the extent Thompson asks that the Court reinstate his release date, the Court lacks personal jurisdiction over the proper defendant. A federal prisoner must "bring his claim in habeas" if "success on the merits will 'necessarily imply the invalidity of confinement or shorten its duration.'" *Durfur*, 314 F. Supp. 3d at 16 (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005)). But, if the Court were to construe Thompson's motion as a habeas petition, two related hurdles bar his claim. *First*, "the immediate custodian rule requires that a habeas petitioner name as the respondent 'the person who has custody over him.'" *Durfur*, 314 F. Supp. at 17 (quoting 28 U.S.C. § 2242). *Second*, "the territorial jurisdictional rule requires 'that the court issuing the writ have jurisdiction over the custodian.'" *Id.* (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004)). Thompson has not named the warden of the prison where he is held, Dkt. 1 (Compl.),

7

and this Court does not have jurisdiction over that warden, who resides in New Jersey, Dkt. 1 at 3 (Compl. ¶ 4). Although the Court might otherwise consider transferring this case to the U.S. District Court of New Jersey, Thompson already has a habeas petition pending before that court, and he can raise any challenge to the length of his confinement in that action. *Id.* at 12 (Compl. ¶ 51). Accordingly, the Court concludes that it lacks personal jurisdiction to the extent Thompson challenges the length of his confinement.

**B.     Return to Halfway House**

Thompson also seeks a preliminary injunction requiring that the BOP return him to the halfway house where he was briefly held before he was transferred back to the New Jersey State Prison. Dkt. 15 at 6–7. To the extent this request is intended to reinitiate the process leading to Thompson's release, it fails for the reasons stated above. It is possible, however, that Thompson does not challenge the duration of his confinement, but—at least for present purposes—only his place of confinement. If so, the Court would have jurisdiction over his motion. The D.C. Circuit and this Court have previously held that challenging one's placement in a federal detention center instead of a halfway house "does not challenge the fact or duration of . . . confinement." *Taylor v. U.S. Probation Office*, 409 F.3d 426, 427 (D.C. Cir. 2005); *see also Jasperson v. Fed. Bur. of Prisons*, 460 F. Supp. 2d 76, 81 (D.D.C. 2006) (holding that "a direct civil action . . . rather than a habeas petition, is [an] appropriate vehicle for challenging" confinement in a correctional facility versus a community confinement center). In *Jasperson*, for example, this Court granted a federal prisoner's motion for a preliminary injunction to "have his place of confinement . . . reviewed for possible placement in a halfway house" when he argued that the BOP's policy, which "only allow[ed] prisoners to serve the last ten percent of their terms" in halfway houses, was invalid. 460 F. Supp. 2d at 79, 80.

Unlike the plaintiff in *Jasperson*, Thompson does not challenge the lawfulness of any BOP policy governing his placement. Even more to the point, assuming that he was lawfully denied parole, he does not identify any basis in the relevant statute or regulations for concluding that he should be housed at a halfway house. To the contrary, the governing statute grants the BOP broad discretion to "designate" the appropriate "correctional facility that meets minimum standards of health and habitability," based on five "consider[ations]." 18 U.S.C. § 3621(b). Those considerations include "the nature and circumstances of the offense" and "the history and characteristics of the prisoner," and, even where the "sentencing court" makes a recommendation or request, the statute makes clear that the discretion still rests with the Bureau of Prisons "to determine or change the place of imprisonment." *Id.* To the extent Thompson asks that the Court direct that he be returned to the halfway house because the Court is likely to conclude at some later date that he should be released, the Court lacks authority to grant that relief for the reasons discussed above; if the Court lacks authority to order his release, it lacks authority to order his transfer to a halfway house in contemplation of issuance of such an order. And, to the extent that Thompson merely contends that the Court should order his return to the halfway house because the USPC and BOP heightened his expectations by briefly transferring him to a halfway house in May 2016, Thompson fails to identify anything in the statute or regulations that would merit such relief.

\* \* \*

The Court understands Thompson's disappointment and frustration. He contends that, after spending over forty years in prison, he was led to believe that he had been relocated to a halfway house as the final step before returning to the community. He is now left to wonder when, if ever, he will be released. None of that, however, provides this Court with personal

jurisdiction over the warden or with authority to order that the USPC grant his request for parole, and nothing in Thompson's motion identifies any authority that this Court might have to order that the BOP return him to the halfway house. The Court must, accordingly, deny Thompson's motion for a preliminary injunction.

## CONCLUSION

For the reasons stated above, Thompson's motion for a preliminary injunction, Dkt. 15, is **DENIED**.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: December 28, 2018