# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| RICHARD THOMPSON, | |
| *Plaintiff*, | |
| v. | Civil Action No. 17-2603 (RDM) |
| PATRICIA K. CUSHWA, *et al.*, | |
| *Defendants*. | |

## **MEMORANDUM OPINION**

Richard Thompson has served over thirty years of his life sentence for murdering a fellow prisoner in 1977, while serving a separate sentence for rape. Dkt. 1 at 6 (Compl. ¶¶ 15–16). Because Thompson was sentenced prior to 1987, *id.*, he is subject to the since-repealed federal parole statute, *see* 18 U.S.C § 4206(d). Under that statute, a federal prisoner upon serving thirty years of a forty-five or more year sentence is eligible for what is often called "mandatory parole." *Id.* That name is deceiving because mandatory parole is far from automatic; to the contrary, a prisoner is *not* eligible for "mandatory parole" if the U.S. Parole Commission determines [1] that he "has seriously or frequently violated institution rules and regulations or [2] that there is a reasonable probability that he will commit any Federal, State, or local crime." *Id.*; *see also Dufur v. U.S. Parole Comm'n*, 314 F. Supp. 3d 10, 19 (D.D.C. 2018). Thompson is still incarcerated because the Commission made such a determination.

Proceeding *pro se*, Thompson brings this suit against Defendants—two former directors of the federal Bureau of Prisons ("BOP") and seven current and former Commission employees—alleging violations of his constitutional due process rights in his parole proceedings. Dkt. 1 at 3–6 (Compl. ¶¶ 5–14). He seeks his immediate release, declaratory relief, and money

damages. Dkt. 1 at 14–15 (Compl. Prayer for Relief). Defendants move to dismiss, arguing, among other things, that Thompson may bring a challenge of this sort only through a petition for writ of habeas corpus in the district in which he is confined. *See* Dkt. 25-1.

For the following reasons, the Court agrees with Defendants and will, accordingly, **DISMISS** Thompson's complaint without prejudice.

## I. BACKGROUND

### A. Factual Background

For purposes of the pending motion to dismiss, the following allegations, which are taken from Thompson's complaint and the documents attached to it, are accepted as true. *See Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). Thompson's incarceration began in 1974, after he was convicted of rape and sentenced to 8 years imprisonment. Dkt. 1 at 6 (Compl. ¶ 16); Dkt. 1-1 at 5. In 1977, while serving that sentence, Thompson was convicted on federal murder charges, 18 U.S.C. § 1111, and was sentenced to a consecutive life sentence. Dkt. 1 at 6 (Compl. ¶ 16). In 1980, Thompson was paroled from his sentence for his rape conviction and began serving his life sentence for murder. *Id.* (Compl. ¶ 17). In 1982, Thompson was convicted of attempted escape and was sentenced to a five-year, concurrent sentence. *Id.* at 7 (Compl. ¶ 18). The following year, Thompson and another inmate stabbed a corrections officer 17 times, and Thompson received an additional 10-year, consecutive sentence for that assault. Dkt. 1-1 at 5, 27. In addition to the three criminal offenses Thompson committed while incarcerated, he "incurred 32 administrative disciplinary infractions." *Id.* at 27. Thompson's criminal and other misconduct, however occurred many years ago, and he has been "largely . . . compliant with the rules of the institution since 1985." *Id.* at 27.

Thompson's appearances before the parole board are described in detail in this Court's opinion on his motion for preliminary injunction, *Thompson v. Cushwa*, No. 17-cv-2603, 2018 WL 6830867, at *1–3 (D.D.C. Dec. 28, 2018), so the Court will provide only an abridged version here. Thompson appeared before the Commission for his initial parole hearing in 1992. Dkt. 1 at 7 (Compl. ¶ 20). At that time, the Commission set his 15-year reconsideration hearing form February 2007. *Id.*; *see also* Dkt. 1-1 at 2. Between 1994 and 2004, Thompson appeared before the Commission for his interim hearings, as required by 18 U.S.C. § 4208(h). Dkt. 1 at 7 (Compl. ¶¶ 21–23). At his 1998 hearing, he received a reduction of twelve months "for maintaining a clear conduct record," thus advancing his 15-year reconsideration hearing to 2006. *Id.* (Compl. ¶ 22); Dkt. 1-1 at 4. Following his 2006 hearing, the examiner recommended Thompson continue to be incarcerated to his "mandatory release date," Dkt. 1-1 at 9; the Commission adopted that recommendation; and the National Appeal Board affirmed the Commission's decision. Dkt. 1 at 7–8 (Compl. ¶¶ 24–26); Dkt. 1-1 at 6–12. Thompson continued to have interim hearings every two years, as required by statute. Dkt. 1 at 8–9 (Compl. ¶¶ 27–29). He became eligible for what is inaptly named "mandatory parole" on February 3, 2017. *Id.* at 14 (Compl. ¶ 61).

Thompson's claim focuses on the Commission's decision to deny him parole on his mandatory parole date in 2017. In January 2016, in advance of his mandatory parole hearing, Thompson alleges that the "Residential Reentry Manager wrote to Defendant Bracey" recommending that Thompson be released upon reaching his mandatory parole date and providing a release plan. *Id.* at 9 (Compl. ¶ 32). That plan was then approved by a Probation Officer. *Id.* (Compl. ¶ 33). Thompson was released to a half-way house in Baltimore, Maryland in May 2016. *Id.* at 10 (Compl. ¶ 34). Thompson alleges that, around that time, Defendant

3

Stephen Nasko "prepared a case analysis report where he cherry picked plaintiff's case file to arrive at a specific oriented outcome where he recommended plaintiff be denied mandatory parole." *Id.* (Compl. ¶ 35); *see also* Dkt. 1-1 at 27. Defendant Patricia Cushwa agreed with Nasko's recommendation to deny parole. Dkt. 1 at 10 (Compl. ¶ 36). In the leadup to his parole hearing, Thompson was removed from the halfway house and transferred first to a SuperMax facility in the Baltimore area, before being transferred to the Kent County Detention Center in Chestertown, Maryland. *Id.* at 10 (Compl. ¶ 38). Thompson's mandatory parole hearing was conducted by U.S. Parole Commission Examiner Mark Tanner on July 22, 2016. *Id.* at 11 (Compl. ¶ 40); *see also* Dkt. 1-1 at 35. Tanner recommended that Plaintiff be denied parole. *Id.* Defendant Stephen Husk, another Commission Examiner, signed an order denying Thompson parole on July 28, 2016. Dkt. 1 at 11 (Compl. ¶ 41). Defendants John Doe and Patricia Smoot also approved the action denying Thompson parole. *Id.* (Compl. ¶¶ 42–44).

In November 2016, Thompson appealed that decision to the Commission's National Appeals Unit, which—according to Thompson—never responded to his appeal. *Id.* at 11 (Compl. ¶ 47); *see* Dkt. 1-1 at 37–38. In June 2017, Thompson's brother, Earl, "went to the [Commission] office building to inquire about the status of plaintiff['s] appeal . . . [and] was told 'the appeal unit never received the appeal.'" Dkt. 1 at 12 (Compl. ¶ 49). Shortly thereafter, Thompson sent a second copy of his appeal to the National Appeals Unit, which again failed to respond. *Id.* (Compl. ¶ 50). Still not having heard back, Thompson had Earl fax his appeal to "a Ms. Graham at the [Commission]." *Id.* at 12–13 (Compl. ¶¶ 53–54).

On June 15, 2017, Thompson filed a petition for writ of habeas corpus in the District of New Jersey, asking that court to order the Commission to initiate new mandatory parole

proceedings within thirty days or, in the alternative, to order him released.[1] *Thompson v. Johnson*, No. 3:18-cv-4569 (D.N.J. filed June 15, 2017) (ECF 1 at 16–17). His petition was denied on July 31, 2019. *Id.* (ECF 14).

## B. Procedural Background

Thompson filed this lawsuit on December 6, 2017. Dkt. 1. He subsequently moved for a preliminary injunction seeking his return to the halfway house in Baltimore, MD. Dkt. 15. The Court denied that motion in a memorandum opinion and order. *See Thompson*, 2018 WL 6830867, at *1. The government now moves to dismiss the complaint, arguing that Thompson's claims must be brought through a petition for writ of habeas corpus and that his claims for money damages are barred by both sovereign or qualified immunity. Dkt. 25. Thompson opposes the government's motion. Dkt. 29. After the completion of briefing, Thompson sought leave to amend his complaint to include allegations that two of the Defendants, Stephen Husk and Patricia Cushwa, continued to participate in proceedings relating to whether he should be parole after he brought this action against them and that their failure to recuse themselves violated his right to procedural due process. Dkt. 34.

## II. ANALYSIS

Defendants argue that the Court should dismiss Thompson's claims because they lie, if at all, in habeas corpus, and this Court lacks habeas venue under 28 U.S.C. § 2241 and lacks personal jurisdiction over Thompson's custodian. *See* Dkt. 25-1. Claims "lying at the 'core' of the writ must be brought in habeas." *Aamer v. Obama*, 742 F.3d 1023, 1037 (D.C. Cir. 2014) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973)). That rule requires federal prisoners, like

---

[1] Thompson had previously filed a separate petition for writ of habeas corpus in the District of New Jersey, *see Thompson v. D'Ilio*, No. 3:13-cv-6282 (D.N.J. Filed Oct. 22, 2013), but that petition raised issues not relevant to the proceedings here, *id.* (ECF 1).

5

Thompson, to bring their claims "in habeas only if success on the merits will 'necessarily imply the invalidity of confinement or shorten its duration.'" *Davis v. United States*, 716 F.3d 660, 666 (D.C. Cir. 2013) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005)).

Thompson contends that the Defendants violated his "due process rights" by conspiring to "continu[e]" him past "his mandatory . . . release date of [February 3, 2017]" because (1) the National Appeals Board had issued final decision confirming that February 3, 2017 was his mandatory parole date, and (2) "[t]he reasons given by Defendants for denying plaintiff mandatory parole were illogical." Dkt. 1 at 14 (Compl. ¶ 61). As further explained in his opposition brief, "[t]he gravamen" of Thompson's complaint is that he was told in 2006 that his "criminal history and poor institutional adjustment warrant[ed] continu[ing] [his] incarceration to [his] mandatory release date," Dkt. 1-1 at 9–11; that decision was affirmed by the National Appeals Board, *id.* at 12; and the Commission denied his right to procedural due process by continuing his parole date after February 3, 2017 without "reciting" any new facts and without identifying any "new institutional misconduct" that would justify reconsideration of the Commission's 2006 decision. Dkt. 28 at 4–5. Thompson posits that, if anything, the intervening facts—including the absence of "an incident report in almost thirty[-]five years" and the award of "the Superior Program Achievement . . . award"—show that he is entitled to parole.[2] *Id.*

Although it is not obvious from the face of Thompson's complaint whether he is bringing a procedural or substantive challenge or both, that question is not itself dispositive of whether the

---

[2] In his opposition brief, Thompson also asserts that the Commission "secretly communicated with the Director of the [Bureau of Prisons] about paroling" him. Dkt. 28 a 12; *see also id.* at 5. To the extent this is meant to assert a distinct due process claim, Thompson's complaint contains no such claim—or even a hint of such a claim—and even a pro se plaintiff is not entitled to amend his complaint in an opposition brief. *See Briscoe v. Costco Wholesale Corp.*, 61 F. Supp. 3d. 78, 90 (D.D.C. 2014). Notably, the proposed amendments to Thompson's complaint contain no such allegation either. *See* Dkt. 34.

6

claim must be brought in habeas. As the Supreme Court has explained, "the nature of the challenge to the procedures [used] could be such as necessarily to imply the invalidity of" the outcome of the adjudication, even where a plaintiff does not contest the result on the merits. *Edwards v. Balisok*, 520 U.S. 641, 645 (1997). In *Edwards*, the plaintiff alleged that a hearing officer adjudicating whether he was lawfully deprived of his good-time credits—the denial of which would have lengthened his prison sentence—had "concealed exculpatory witness statements and refused to ask specified questions of requested witnesses," effectively "prevent[ing] [the plaintiff] from introducing extant exculpatory material and intentionally den[ying] him the right to present evidence in his defense." *Id.* at 644 (internal quotations omitted). The Court reasoned that a procedural challenge of this sort "necessarily implied the invalidity" of the deprivation of plaintiff's good-time credits because due process's requirements are "not so lax as to let stand the decision of a biased hearing officer who dishonestly suppresses evidence of innocence"—notwithstanding the strength of the evidence against the accused. *See id.* at 647.

Similarly, it is not dispositive that Thompson seeks monetary relief, as well as injunctive and declaratory relief, as a remedy. A claim may "directly" "implicate the invalidity of confinement or shorten its duration," *Wilkinson*, 544 U.S. at 82, by seeking "an injunction compelling speedier release" or may do so "indirectly" by seeking another form of relief or a "judicial determination" that nonetheless "necessarily implies the unlawfulness of the State's custody," *id.* at 81. Because Thompson's claims—both for injunctive relief and money damages—rest on the same alleged due process violation, the dispositive question is whether that violation "necessarily implies the unlawfulness of the State's custody." *Wilkinson*, 544 U.S. at 81; *see Heck v. Humphrey*, 512 U.S. 477, 487 (1994).

7

This raises the question whether a challenge that takes aim at the Commission's determination that the plaintiff "has seriously or frequently violated institution rules and regulations or that there is a reasonable probability that he will commit any Federal, State, or local crime," 18 U.S.C. § 4206(d), "necessarily implies the unlawfulness of the State's custody" for purposes of the habeas channeling defense, *see Wilkinson*, 544 U.S. at 81. The Court is aware of only one case that has raised the question whether a due process challenge to a proceeding resulting in the denial of federal mandatory parole must be brought in habeas. In *Dufur v. United States Parole Commission*, 314 F. Supp. 3d 10 (D.D.C. 2018), this Court considered a similar claim brought by a different federal prisoner. But, in that case the Commission's motion to dismiss "d[id] not invoke the [habeas] channeling defense and . . . ma[de] only glancing reference to the habeas venue rules." *Id.* at 16. Because the habeas channeling rule is "not jurisdictional in the sense that the Court has a duty to consider the defense *sua sponte*," the Court held that the Commission had waived that defense by failing to raise it. *Id.* Here, in contrast, Defendants invoke the habeas channeling rule, *see* Dkt. 25-1, so the Court must decide whether Thompson's claim is subject to that rule.

The Supreme Court has permitted challenges to parole procedures to proceed under 42 U.S.C. § 1983 when they do not "necessarily imply the unlawfulness of the State's custody." *Wilkinson*, 544 U.S. at 81. In *Wilkinson*, two Ohio state prisoners claimed that their parole-eligibility and parole-suitability proceedings violated their right to procedural due process. *Id.* at 78. Ohio argued that victory on the plaintiffs' claims would likely "lead to a speedier release from prison" and that the claims, accordingly, should have been brought in habeas. *Id.* The Supreme Court rejected that contention, explaining that a finding that the parole eligibility proceedings were constitutionally deficient would not have meant "immediate release from

8

confinement or a shorter stay in prison" but, rather, would "at most" would have entitled the plaintiffs to "new eligibility review[s]" and possibly more expeditious "*consideration* of . . . new parole application[s]." *Id.* at 82.

In concluding that the habeas channeling rule did not apply, the *Wilkinson* Court stressed that, if new hearings were required, the Ohio parole authorities retained "their discretion" to "decline to shorten [the plaintiffs'] prison term[s]." *Id*. (citing Ohio Rev. Code Ann. § 2967.03 (providing for discretionary parole)). In other words, because the Ohio parole scheme vested the parole board with broad discretion, even if the two Ohio plaintiffs were successful, they would have—at best—been subject to this discretionary review process. While, of course, new hearings, of course, would have increased the Plaintiffs' odds of release, a judicial decision granting them new hearings would not have undermined the legal basis for their confinement. The relationship between an action challenging *discretionary* parole proceedings and ultimate release, as a result, was too attenuated to trigger the habeas channeling rule, which applies only when deciding the case in the plaintiff's favor would "necessarily implicate" the validity of the plaintiff's confinement. *See id.*

The federal parole scheme at issue here differs from that at issue in *Wilkinson* in at least one significant respect. The Ohio statute in *Wilkinson* provided the parole board with broad discretion to grant parole where appropriate. *Wilkinson*, 544 U.S. at 82 (citing Ohio Rev. Code. Ann. § 2967.03 (Lexis 2003)). The federal mandatory parole statute, in contrast, provides that federal prisoners who, like Thompson, have served at least thirty years of a sentence of forty-five years or longer "*shall* be released" unless certain findings are made by the Commission. 18 U.S.C. § 4206(d) (emphasis added). Whether that difference is sufficient to make a purely procedural challenge to the Commission's determination more akin to *Edwards* than *Wilkinson* is

9

a difficult question that the Court need not answer here. Although some of Thompson's allegations use procedural terminology—such as Defendant Nasko's "cherry pick[ing]" of facts, Dkt. 1 at 10 (Compl. ¶ 35)—the claim that he actually asserts and the relief that he actually seeks fall squarely within the bounds of the habeas channeling rule. He alleges that the Commission violated his right to due process by denying him mandatory parole without any reason; it was, in his words, "illogical" for the Commission, in 2006, to "continue [his] incarceration to [his] mandatory release date" and then, in 2017, to concluded, without any evidence of new violations of institution rules or other misconduct that he should not be released on that date.[3] Dkt. 1 at 14 (Compl. ¶ 61). Consistent with that claim, the relief he seeks includes "reinstating [his] release date immediately." Dkt. 1 at 15 (Prayer for Relief). Thus, if successful, Thompson's claim would necessarily invalidate or shorten his confinement and, accordingly, his claim must be brought, if at all, in habeas. *See Edwards*, 1520 U.S. at 645.

Notwithstanding the Court's obligation to liberally construe *pro se* complaints, *see Gowadia v. Internal Revenue Service*, 87 F. Supp. 3d 188, 191 (D.D.C. 2015), even if the complaint could be construed as a habeas petition under 28 U.S.C. § 2241, Thompson has failed to name the warden of the correctional facility in New Jersey at which he is detained as the defendant. *See* 28 U.S.C. § 2242; *see also Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004). And, even had Thompson named the warden, this Court could not hear that petition because it lacks venue and personal jurisdiction over the warden. *Stokes v. U.S. Parole Comm'n*, 374 F.3d

---

[3] Thompson's complaint also includes allegations regarding his administrative appeal to the National Appeal Board and the Board's alleged failure to respond to that appeal. Dkt. 1 at 11–13 (¶¶ 47–53). As far as the Court can discern, Thompson is not alleging that the Board violated his right to due process by failing to consider his appeal but, rather, is seeking to establish that he "exhausted the applicable administrative remedies," *id.* at 13 (Compl. ¶ 57).

1235, 1238 (D.C. Cir. 2004) ("A district court may not entertain a habeas petition involving present physical custody unless the respondent custodian is within its territorial jurisdiction.").

The Court has also considered whether to transfer Plaintiff's complaint to the U.S. District Court for the District of New Jersey, where Plaintiff is confined and where venue lies for a habeas petition. 28 U.S.C. § 1631 (permitting courts lacking jurisdiction to transfer cases to "any other such court . . . in which the action . . . could have been brought" where "it is in the interest of justice" to do so); 28 U.S.C. § 1406(a) (same for venue). The Court concludes that transfer would not serve the interests of justice for three reasons. First, Thompson has already brought two habeas petitions in the District of New Jersey, at least one of which raised issues similar to those asserted here. *Thompson v. Johnson*, No. 3:18-cv-4569 (D.N.J. filed June 15, 2017) (ECF 1 at 16–17); *see also Thompson v. D'Ilio*, No. 3:13-cv-6282 (D.N.J. Filed Oct. 22, 2013). In *Thompson v. Johnson*, Thompson alleged that the Commission violated his due process rights by continuing his incarceration after his mandatory parole date and that it had no basis to "reconsider whether to grant him parole in 2016." *Thompson v. Johnson*, No. 3:18-cv-4569 (D.N.J. filed June 15, 2017) (ECF 1 at 16–17). If that is not precisely the same claim that he has brought here, it is very close, and Thompson could easily have included any additional allegations in that case that he believed supported his petition.

Second, and relatedly, Thompson is well aware of the difference between a habeas petition and a claim for declaratory, injunctive, and monetary relief—as evidenced by his separate, similar habeas petition in the District of New Jersey—and he evidently made a considered decision not to bring this case as a habeas petition.

Third, the Court raised the issue of transfer in its December 28, 2018 decision denying Thompson's motion for a preliminary injunction, explaining that it would not transfer the case at

that time because "Thompson already ha[d] a habeas petition pending before" the U.S. District Court for the District of New Jersey and could "raise any challenge to the length of his confinement in that action." *Thompson*, 2018 WL 6830867, at *4. Following that decision, neither Thompson nor Defendants has requested that the Court transfer this case to New Jersey. The New Jersey case, moreover, was not dismissed until July 31, 2019, *see Thompson v. Johnson*, No. 3:18-cv-4569 (D.N.J. 2019) (ECF 13), and thus Thompson had ample time to seek leave to amend his petition in that case to assert additional ground for relief, if any, raised here and not there.

The Court will, accordingly, Dismiss Thompson's complaint without prejudice.

\* \* \*

Thompson separately seeks leave to amend his complaint. *See* Dkt. 34 (Am. Compl.); Dkt. 35 (opposing Plaintiff's submission of an amended complaint as past-time and futile). His proposed amended complaint alleges that Defendants Husk and Cushwa violated his due process rights by continuing to participate in proceedings relating to his parole, even though Thompson had sued them in this case. *See* Dkt. 34. In Thompson's view, once he brought suit, Husk and Cushwa had only one option—they needed to recuse themselves from all proceedings relating to Thompson's parole. *See id.* Although courts "should freely give leave" to amend "when just so requires," Fed. R. Civ. P. 15(a)(2), this is not such a case for two reasons.

First, the proposed amendment is unrelated to Thompson's pending claim—it relates to actions taken by the Commission and its staff after the events giving rise to the pending case. If the Court were to grant leave to amend, it would invite a potentially endless stream of amendments as the Commission continues to consider whether and when to grant Thompson parole. Opening that door would put the Court in the position of superintending an ongoing administrative matter and considering each decision or action as it is made. That is not a proper

role for the Court, particularly given the Court's conclusion that Thompson's current complaint should be dismissed and thus, absent the amendment, nothing remains of the case.

Second, the proposed amendment is, in any event, futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). "[A] district court may properly deny a motion to amend [as futile] if the amended pleading would not survive a motion to dismiss." *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 218 (D.C. Cir. 2010). Here, the fact that Husk and Cushwa did not recuse themselves because they were defendants in a pending lawsuit concerning the performance of their official functions cannot, standing alone, suffice to state a due process claim. Courts have held that judges need not recuse themselves due to bias in the analogous situation in which a litigant sues a judge for performance of her official functions. *See Strange v. Islamic Republic of Iran*, 46 F. Supp. 3d 78, 85 (D.D.C. 2014) (collecting cases). It follows with even greater force that the due process clause does not require Commission members and staff to recuse themselves merely because they are subject to a suit concerning their official functions. Adopting such a rule would "allow litigants to . . . shop" among government officials and employees—suing those who have declined to grant them relief in earlier proceedings—and would frustrate the ability of agencies to discharge their statutory responsibilities in an orderly manner. *Id.* (quoting *In re Taylor*, 417 F.2d 649, 652 (7th Cir. 2005)).

pEven more importantly, there is no any reason to believe that such a constitutionally-mandated recusal rule would promote fairness and public confidence; to the contrary, it would merely shift the ability to decide who should act on behalf of the agency from the agency to the party seeking administrative relief. The Court does not doubt that there may be occasions when recusal is appropriate based on actual or apparent bias resulting from contentious litigation between the government official and the interested party. But absent unusual circumstances not

13

alleged here, the mere fact that the party seeking relief has sued the official for some asserted misfeasance in the discharge of his governmental duties is not enough to state a claim under the due process clause.

The Court will, accordingly, deny Thompson's motion for leave to amend.

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendants' motion to dismiss, Dkt. 25, and will **DENY** Plaintiff leave to amend his complaint, *see* Dkt. 34.

A separate order will issue.


    /s/ Randolph D. Moss
    RANDOLPH D. MOSS
    United States District Judge

Date: March 9, 2020